IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-274-D

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>)<br>v. )<br>)<br>ASAEL GOMEZ-JIMENEZ, )<br>)<br>Defendant. ) | **ORDER** |

On March 18, 2021, Asael Gomez-Jimenez ("Gomez-Jimenez" or "defendant"), proceeding pro se, moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 398]. In his pro se motion, Gomez-Jimenez seeks immediate release or a sentence reduction to 180 months' imprisonment. See id. at 23. On January 19, 2022, Gomez-Jimenez, through counsel, filed a memorandum and documents in support [D.E. 401]. The government has not responded, and the time within which to do so has expired. As explained below, the court denies Gomez-Jimenez's motion.

I.

On March 10, 2014, without a plea agreement, Gomez-Jimenez pleaded guilty to possession with intent to distribute a quantity of cocaine and aiding and abetting (count eight) and eluding examination and inspection by immigration officers (count ten). See [D.E. 46, 182]. On March 13, 2014, a jury convicted Gomez-Jimenez of conspiracy to possess with intent to distribute more than 5 kilograms of cocaine (count one) and distributing a quantity of cocaine and aiding and abetting (count five). See [D.E. 196]. On July 8, 2014, the court held Gomez-Jimenez's sentencing hearing and adopted the facts set forth in the Presentence Investigation Report ("PSR"). See Fed. R. Crim.

P. 32(i)(3)(A)–(B); PSR [D.E. 210]; [D.E. 215, 225]; Sentencing Tr. [D.E. 257] 5–6. After resolving Gomez-Jimenez's objections, the court calculated Gomez-Jimenez's total offense level to be 39, his criminal history category to be I, and his advisory guideline range to be 262 to 324 months' imprisonment on count one, 240 months' imprisonment on counts five and eight, and 6 months' imprisonment on count ten. See Sentencing Tr. at 11–12. After considering the arguments of counsel and all relevant factors under 18 U.S.C. § 3553(a), the court sentenced Gomez-Jimenez to 324 months' imprisonment on count one, 240 months' imprisonment on counts five and eight, and 6 months' imprisonment on count 10, to run concurrently for a total term of 324 months' imprisonment. See id. at 24; [D.E. 225]. Gomez-Jimenez appealed. See [D.E. 231]. On September 29, 2015, the United States Court of Appeals for the Fourth Circuit affirmed his conviction and sentence. See United States v. Gomez-Jimenez, 625 F. App'x 602 (4th Cir. 2015) (per curiam) (unpublished).

On October 30, 2015, and March 9, 2016, Gomez-Jimenez moved for a sentence reduction under 18 U.S.C. § 3582(c)(2), U.S.S.G. § 1B1.10, and Amendment 782. See [D.E. 317, 327]. On May 19, 2017, after recalculating the advisory guideline range and "review[ing] the entire record and all relevant policy statements," the court denied Gomez-Jimenez's motions, concluding that reducing his sentence "would threaten public safety in light of his serious criminal conduct." [D.E. 361] 3.

On January 29, 2016, Gomez-Jimenez moved under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See [D.E. 323]. On May 23, 2017, the court granted the government's motion to dismiss Gomez-Jimenez's section 2255 motion for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). See [D.E. 362]. Gomez-Jimenez appealed. See [D.E. 364]. On October 20, 2017, the Fourth Circuit denied a certificate of appealability and dismissed the appeal. See United States v. Gomez-Jimenez, 699 F. App'x 209 (4th Cir. 2017) (per curiam) (unpublished).

2

On September 10, 2018, Gomez-Jimenez again appealed his sentence. See [D.E. 386]. On December 27, 2018, the Fourth Circuit dismissed the appeal as duplicative and untimely, noting it had twice upheld Gomez-Jimenez's sentence. See United States v. Gomez-Jimenez, 746 F. App'x 252 (4th Cir. 2018) (per curiam) (unpublished).

II.

On December 21, 2018, the First Step Act went into effect. See First Step Act, 132 Stat. at 5249. Before the First Step Act, only the Director of the Bureau of Prisons ("BOP") could file a motion for compassionate release. Under the First Step Act, a sentencing court may modify a sentence of imprisonment either upon a motion of the Director of the BOP "or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

After a defendant meets the exhaustion requirement, a defendant must (1) demonstrate "extraordinary and compelling reasons" for a sentence reduction, or (2) be at least 70 years old, have served at least 30 years in prison, and have the Director of the BOP determine that the defendant is not a danger to the safety of another person or the community. Id. In deciding to reduce a sentence under section 3582(c)(1)(A), a court must consult the sentencing factors in 18 U.S.C. § 3553(a) and must ensure that a sentence reduction is "consistent with applicable policy statements" of the United States Sentencing Commission (the "Commission"). Id.

The Commission policy statements include U.S.S.G. § 1B1.13. Section 1B1.13 essentially parrots section 3582(c)(1)(A)'s requirements and adds that the defendant not be "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). Section 1B1.13's application notes provide examples of extraordinary and compelling reasons, including: (A) serious

3

medical conditions of the defendant, (B) advanced age of the defendant when coupled with a serious deterioration in physical and mental health due to aging and having served at least 10 years or 75% of his or her imprisonment term (whichever is less), (C) family circumstances, or (D) another extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1.[1] Application note 2 states

---

[1] Application note 1 to U.S.S.G. § 1B1.13 states in full:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

    (A) Medical Condition of the Defendant.—

        (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

        (ii) The defendant is—

            (I) suffering from a serious physical or medical condition,

            (II) suffering from a serious functional or cognitive impairment, or

            (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

    (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

    (C) Family Circumstances.—

4

that "an extraordinary and compelling reason need not have been unforeseen at the time of sentencing to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13 cmt. n.2. Thus, the fact "that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." Id. Application note 3 states, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13 cmt. n.3.

The Commission has lacked a quorum since Congress enacted the First Step Act and has not updated U.S.S.G. § 1B1.13 to account for the First Step Act. Accordingly, section 1B1.13 does not provide a policy where an inmate files a motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A). See, e.g., United States v. High, 997 F.3d 181, 186 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330–31 (4th Cir.), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 280–84 (4th Cir. 2020). Rather, "[section] 1B1.13 only applies when a request for compassionate release is made upon motion of the Director of the [BOP]." Kibble, 992 F.3d at 330–31. Nevertheless, section 1B1.13 provides informative policy when assessing an

---

      (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

      (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

  (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n.1.

5

inmate's motion, but a court independently determines whether "extraordinary and compelling reasons" warrant a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). See High, 997 F.3d at 186; McCoy, 981 F.3d at 284. In doing so, the court consults not only U.S.S.G. § 1B1.13, but also the text of 18 U.S.C. § 3582(c)(1)(A) and the section 3553(a) factors. See, e.g., McCoy, 981 F.3d at 280–84; United States v. Jones, 980 F.3d 1098, 1101–03 (6th Cir. 2020); United States v. Gunn, 980 F.3d 1178, 1180–81 (7th Cir. 2020); United States v. Ruffin, 978 F.3d 1000, 1007–08 (6th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237–38 (2d Cir. 2020); United States v. Clark, No. 1:09cr336-1, 2020 WL 1874140, at *2 (M.D.N.C. Apr. 15, 2020) (unpublished).

On March 3, 2021, Gomez-Jimenez applied to the warden at FCI Allenwood Low for compassionate release. See [D.E. 398-1] 1. On March 26, 2021, the warden denied his request. See [D.E. 401-1]. Therefore, Gomez-Jimenez has met the exhaustion requirement, and the court addresses his motion on the merits. Cf. United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021).

Gomez-Jimenez seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, his health condition, his rehabilitation efforts, and his supportive family. See [D.E. 398] 4–36; [D.E. 401] 4–9.[2] As for the medical condition of the defendant policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Gomez-Jimenez is overweight and argues this health condition

---

[2] Gomez-Jimenez's arguments also focus on the conditions at FCI Allenwood Low. See [D.E. 398] 8–22; [D.E. 401] 5–6. As of March 22, 2022, there are currently zero inmates and zero staff at FCI Allenwood Low who have COVID-19. See https://bop.gov/coronavirus/ (last visited Mar. 22, 2022).

6

puts him at heightened risk of serious infection from COVID-19. See [D.E. 401] 7–8. But Gomez-Jimenez has completed "a multitude of fitness courses" while federally incarcerated and does not argue that he lacks opportunities to work to maintain his weight while incarcerated. [D.E. 401] 9; see [D.E. 401-3]. Gomez-Jimenez has not disclosed to the court whether he has received a COVID-19 vaccine. Cf. United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."). Accordingly, reducing Gomez-Jimenez's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, Gomez-Jimenez's health condition, his efforts at rehabilitation, and his supportive family together are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Gomez-Jimenez's sentence. See High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); Clark, 2020 WL 1874140, at *3–8.

Gomez-Jimenez is 38 years old and is incarcerated for conspiracy to distribute and possess with intent to distribute 5 kilograms or more of cocaine, distribution of a quantity of cocaine and aiding and abetting, possession with intent to distribute a quantity of cocaine and aiding and abetting, and eluding examination and inspection by immigration officers. See PSR ¶¶ 1–5; [D.E. 225]. Gomez-Jimenez was part of a multi-year drug-trafficking conspiracy, along with his two brothers

7

and other co-conspirators, that trafficked cocaine from Mexico into the Eastern District of North Carolina. See PSR ¶¶ 11–34. After his brothers were arrested in 2010, Gomez-Jimenez did not stop distributing drugs but instead ramped up his efforts by taking control of the drug-trafficking organization. See id. ¶¶ 12, 72. Gomez-Jimenez was responsible for distributing 22 kilograms of cocaine. See id. ¶ 33. He also maintained premises for the purpose of distributing controlled substances. See id. ¶¶ 33, 70.

Gomez-Jimenez has made some positive efforts while federally incarcerated. See [D.E. 398] 7–8; [D.E. 401] 8–9. For example, Gomez-Jimenez has worked toward obtaining his GED and has taken educational and vocational training courses. See [D.E. 398-1] 2, [D.E. 401-3]. Furthermore, Gomez-Jimenez has maintained employment while incarcerated. See [D.E. 398] 27. Gomez-Jimenez has not submitted any disciplinary records to the court; however, he states has had no "violent infractions" while incarcerated. See id.

The court must balance Gomez-Jimenez's positive efforts with his serious criminal conduct, the need to punish him for his serious and prolonged criminal conduct, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 187–91; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). The court also has considered Gomez-Jimenez's potential exposure to COVID-19, his medical condition, his upbringing, his rehabilitative efforts, his release plan, and his supportive family. See [D.E. 401] 8–9. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Gomez-Jimenez's arguments, the need to punish Gomez-Jimenez for his serious and prolonged criminal conduct, to incapacitate Gomez-Jimenez, to promote respect for the law, to deter others, and to protect society, the court denies Gomez-Jimenez's motion for

8

compassionate release. See, e.g., Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); High, 997 F.3d at 187–91; Ruffin, 978 F.3d at 1008–09; Chambliss, 948 F.3d at 693–94; United States v. Hill, No. 4:13-CR-28-BR, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).[3]

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 398].

SO ORDERED. This 22 day of March, 2022.

JAMES C. DEVER III
United States District Judge

---

[3] Gomez-Jimenez argues he is not a danger to society because he will be deported when he is released from incarceration. See [D.E. 398] 23–28. Assuming without deciding that he will be deported, a person in Mexico who traffics drugs into the United States remains a danger. Moreover, and in any event, whether a defendant is a danger to society is not the only factor the court must consider. See 18 U.S.C. § 3553(a). Gomez-Jimenez's sentence reflects the need to punish Gomez-Jimenez, to promote respect for the law, and to deter others from engaging in high-volume drug-trafficking like Gomez-Jimenez did.

9

Case 5:12-cr-00274-D   Document 402   Filed 03/22/22   Page 9 of 9